UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| RODNEY DUNN, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:09-0007 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| JERRY SPIVEY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is the plaintiff Rodney Dunn's Motion to Alter or Amend Judgment (Docket No. 92). This motion will be denied.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

As discussed in detail in the court's August 2, 2010 Memorandum that ruled on the cross motions for summary judgment, this case concerns whether the plaintiff, Rodney Dunn, was denied his procedural due process rights when his employment as a teacher at a vocational school formerly known as Tri-County Vocational School (the "School") ended in 2008. The plaintiff's position at the School was no longer available once, in the summer of 2008, the Tennessee Board of Regents (TBR) assumed responsibility for the School and discontinued the only class (automobile mechanics) that the plaintiff was qualified to teach. (Docket No. 88 at 4.) A full recitation of the relevant facts is provided in that Memorandum and need not be repeated here.

In that Memorandum and accompanying Order, the court granted the summary judgment motions of the remaining defendants, that is: (1) Charles Manning and Jerry Spivey, in their

1

capacities as officials of the state of Tennessee and the TBR (the "State Defendants"), which was unopposed, (2) Jerry Spivey in his capacity as long-time director of the School, and (3) Jackson and Macon Counties. (Docket No. 89.) Consistent with this, the court denied Dunn's summary judgment motion and dismissed the case. (*Id.*)

The paramount issue considered in the Memorandum was whether Dunn, at the time of his separation from the School, had tenure, which was the property right that Dunn claimed had been infringed upon without due process. (Docket No. 88 at 6.) There is no dispute that Tennessee's teacher tenure law affords tenured teachers certain protections that Dunn was not afforded upon his separation from the School. For instance, the plaintiff was not placed on a "preferred list" for re-hire. (*Id.* at 3; *see also* T.C.A. § 49-5-511(b)(3)).

Dunn's eight years of continuous employment at the School certainly *qualified* him for "permanent tenure." *See* T.C.A. § 49-5-503. The issue was whether Dunn, although qualified, had ever actually been *granted* tenure and whether an affirmative grant of tenure was required to achieve the status. Defendant Spivey, as Director of the School, never recommended the plaintiff for tenure to the school board and that board never considered the plaintiff for tenure. (Docket No. 88 at 4-5.)

Despite the fact that the defendants directed their argument toward other issues, a review of the case law and statutes indicated that the plaintiff was not tenured at the time of his dismissal, because his candidacy for tenure was never raised by the director of schools or considered by the relevant board of education.[1] That is, T.C.A. § 49-2-203 states that "it is the

---

[1] In his present motion, the plaintiff takes issue with the fact that the court independently analyzed whether the plaintiff had tenure at the time he was terminated, even though this was not the focus of the defendants' briefing. (Docket No. 93 at 4.) In summary judgment briefing, the

2

duty of the local board of education to elect, upon the recommendation of the director of schools, teachers who have attained or are eligible for tenure." And, it is the "duty" of the relevant board of education to assign to the director of schools the "duty to . . . recommend to the board teachers who are eligible for tenure or notify such teachers of their failure of reelection." T.C.A. § 49-2-301(b)(1)(J).

Additionally, the Tennessee Supreme Court, in *Bowden v. Memphis Bd. of Education*, 29 S.W.3d 462, 465 (Tenn. 2000), stated that, in Tennessee, obtaining tenure "is dependent not only upon service but also upon affirmative action [beyond re-hire] by the Board of Education." *Id.* That is, "the completion of the probationary period by itself does not automatically confer permanent tenure, but rather, is merely a condition precedent to eligibility for tenure." *Id.*

A key complicating factor, however, was that T.C.A. § 49-5-504(b), the central provision relied upon by the court in *Bowden*, changed in 2006. That is, until 2006, this provision stated that, "[u]pon completion of the probationary period, any teacher who is reemployed or retained in the system is entitled to the tenure status for which such teacher is qualified by college training and licensing; provided, that the director of schools shall notify the board prior to reelection by the board that the teacher, if reelected, will attain tenure status."

After the 2006 amendment, the provision now states: "[n]otwithstanding any other provision to the contrary, upon the completion of the statutory probationary period, any teacher eligible for tenure status shall be either recommended by the director of schools for tenure or nonrenewed; provided, however, that the teacher cannot be continued in employment if tenure is

---

defendants primarily argued that the prior version of Section 504(b) (discussed below) controlled, and argued that, assuming Dunn acquired tenure, it was not the defendants who abridged his property interest. (Docket No. 88 at 10-11.)

not granted by the board of education." The issue was whether the change in the language of Section 504(b) allowed the plaintiff to obtain tenure without any recommendation by the director of schools or "affirmative action by the Board of Education."

The court canvassed the case law, the statutes, and the secondary sources and found "no indication that the amendment to Section 504(b) ushered in a sea change in how tenure is awarded to Tennessee teachers." (Docket No. 88 at 11.) That is, the "established system" by which the director of schools makes tenure recommendations to the board, which the board then acts upon, existed "throughout the entire relevant time period," and the change in the language of Section 504(b) was not accompanied by corresponding changes in the language of other statutes. While both versions of Section 504(b) unquestionably impose obligations on the director and the school board, the court concluded that "the text of Section 504(b) certainly does not state that a teacher can unwittingly obtain tenure through the inaction of the director of schools and the board of education, and such an interpretation of the language of Section 504(b) is inconsistent with the statutory scheme that mandates that tenure is only to be awarded after consideration by both the director of schools and the board of education." (*Id.*)

The court's conclusion was bolstered by the fact that the "case law and commentary on the amendment to Section 504(b) is sparse." (*Id.* at 12.) That is, the court found no indication that, in the four years since the amendment passed, *Bowden* had been called into question, and the only relevant commentary on the new Section 504(b), an opinion from the Tennessee Attorney General, stated that, "in order to be awarded tenure, the procedures set forth in [Section 504] must be followed," that is, "any teacher eligible for tenure status shall either be recommended by the director of schools for tenure or non-renewed." Tenn. Op. Atty. Gen. No.

4

09-144, 2009 WL 2413681, *1 (Tenn. A.G. July 31, 2009). Finding insufficient indication that the amendment to Section 504(b) ushered in a "tenure by default" scheme, the court concluded that the plaintiff did not have the property right he claimed, and, therefore, dismissed his procedural due process action. (Docket No. 88 at 14.)

On August 6, 2010, the plaintiff filed his Motion to Alter or Amend.

## ANALYSIS

### I. Standard of Review

Federal Rule of Civil Procedure 59(e) states that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). The district court may grant a motion to alter or amend (or reconsider) a judgment under Fed. R. Civ. P. 59(e) for any of four reasons: (1) because of an intervening change in controlling law; (2) newly discovered evidence; (3) to correct a clear error of law; or (4) to prevent manifest injustice. *Abnet v. Unifab Corp.*, 2009 WL 232998, *3 (6th Cir. Feb. 3, 2009). In discussing the movant's substantial burden under Rule 59(e), the Sixth Circuit has held that a "motion under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." *Roger Miller Music, Inc. v. Sony/ATV Publishing, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (internal quotation omitted).

The Rule 59(e) vehicle does not exist to provide the movant with a second opportunity to make its previous argument, that is, a Rule 59(e) motion "is not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Moreover, the movant should not use a Rule 59(e) motion to raise or make arguments "which could, and should, have been made before judgment issued." *Id.*; *see also Roger Miller Music,*

5

*Inc.*, 477 F.3d at 395 ("under Rule 59(e), parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued.")

In light of the "narrow purposes" of the motion and the judicial system's interest in the finality of judgments and in the conservation of judicial resources, Rule 59(e) motions "typically are denied." *Miller v. Bell*, 655 F. Supp.2d 838, (E.D. Tenn. 2009)(internal quotation omitted). Here, the plaintiff does not discuss, or tie his argument to, the Rule 59(e) standard of review, but it appears that the plaintiff believes that the court made a "manifest" error of law. (Docket No. 92 at 1.)

## II. Motion to Alter or Amend

### A. The Parties' Arguments

The plaintiff maintains that the amended Section 504(b) clearly provides for automatic tenure and a contrary interpretation is unreasonable. That is, the plaintiff refers to the court's reasoning in the August 2, 2010 Memorandum as "puzzling" and to its analysis as "contrary to standard statutory construction rules" and "in direct conflict with both the plain meaning of the statute and its legislative history." (Docket No. 93 at 1.)

Specifically, the plaintiff argues that the basic application of standard principles of statutory interpretation reveals that "the defect [in Section 504(b) that] the legislature was attempting to remedy was the denial of tenure to teachers otherwise qualified for tenure by the mere failure of either the Director of Schools or the Board (or both) to perform their respective duties." (*Id.* at 2-3 citing for basic statutory construction principles *e.g. State v. Turner*, 193 S.W.3d 522, 527 (Tenn. 2006); *State v. Jackson*, 60 S.W.3d 738, 742 (Tenn. 2001)). According to the plaintiff, the court's interpretation renders the amendment to Section 504(b) "useless"

6

because it denies tenure to a teacher whose candidacy for tenure was ignored by the director of schools or the board. (Docket No. 93 at 3.) The plaintiff argues that the "only rational interpretation" of the amendment to Section 504(b) is that the legislature, cognizant of *Bowden*, amended Section 504(b) to provide that "reemployment after the probationary period does automatically confer tenure to an otherwise qualified teacher." (*Id.* at 4.)

While the plaintiff believes that the current version of Section 504(b) unambiguously confers tenure on the plaintiff, he argues that, even if the statute is ambiguous and recourse to legislative history was appropriate, that history supports his view. (*Id.* at 5 citing, for basic ambiguity principles, *e.g. Elgharib v. Napolitano*, 600 F.3d 597, 601 (6th Cir. 2010)). For the first time here, the plaintiff filed a CD containing "discussion of the bill at various levels of its passage through the [legislative] process," and identified specific statements by legislators before certain committees that, the plaintiff argues, demonstrate that the "clear and unequivocal . . . purpose of the amendment is to automatically grant tenure to teachers rehired after the probationary period." (*Id.* at 5-7.)

All defendants responded in opposition.[2] Jackson and Macon Counties argue that the court's interpretation of the amended Section 504(b) is "clearly correct" and does not render the amendment "useless"; that is, "prior to the 2006 Amendment, the Board was able to deny tenure and reinstate the teacher with the school. The renewing of a teacher's contract is no longer possible if tenure is denied under the 2006 Amendment." (Docket No. 99 at 3-5.) Moreover, these defendants argue, "if the legislature intended to grant automatic tenure without

---

[2]The State Defendants' response focused on the fact that the plaintiff had previously conceded the validity of the State Defendants' summary judgment motion. (Docket Nos. 97-98.)

7

consideration by the Board, it could have very easily and concisely done so by inserting such exact words or language into the statute, but it did not." (*Id.* at 5.) Instead, the amendment to Section 504(b) imposes an additional obligation on the director and the board, but it does not provide for "automatic tenure." (*Id.*)

Defendant Spivey (in his capacity as director) also argues that the court's interpretation of the amended Section 504(b) is correct; that is, "simply because the amended statute states that a teacher cannot continue to be employed if tenure is not granted is not the same thing . . . as saying that a teacher who is not granted tenure" but continues to work at the school "is automatically tenured." (Docket No. 100 at 1-2.) While the amended statute places additional "responsibility" onto the director and the board, the "formula for awarding a teacher tenure," laid out elsewhere in the Code, remains. (*Id.*) Indeed, the amendment to Section 504(b) uses the mandatory "shall" to impose upon the director the responsibility for recommending the teacher or not renewing that teacher. (*Id.*)

Spivey also points out that, under the plaintiff's reading, Section 504(b) – amendment and all – becomes superfluous. (*Id.*) That is, as discussed in the Memorandum, T.C.A. § 49-5-503 has always provided that an otherwise qualified teacher who is re-hired after his third year qualifies for tenure, and, therefore, the continued "existence of [Section 504(b)] . . . means something more than a teacher automatically becomes tenured through the passage of time if a director and a board fail to act." (*Id.* at 3.) The defendants also claim that the plaintiff has mis-characterized the legislative history and argue that the legislative history does not show that the General Assembly voted for an "automatic tenure" scheme. (Docket No. 99 at 5-7; Docket No. 100 at 4.)

8

B.     **Resolution**

   i.     **Statutory interpretation**

In its argument based upon statutory interpretation, the plaintiff has failed to meet his considerable burden on a Rule 59(e) motion. "A basic principle of statutory construction is to ascertain and give effect to legislative intent without unduly restricting or expanding the intended scope of a statute," that is, "the Court must examine the language of a statute and, if unambiguous, apply its ordinary and plain meaning." *Bowden*, 29 F.3d at 465.

The issue here is whether, in construing the plain text of the statute, the court made a "manifest" error in finding that the text of the amended Section 504(b) does not automatically provide tenure to an otherwise qualified teacher who is never recommended for tenure or considered for tenure by the relevant board of education. Given that neither the amended Section 504(b) nor the other statutes that lay out the recommendation/consideration formula for awarding tenure explicitly provide for automatic tenure, and given the absence of any indication since the passage of the amended Section 504(b) that the scheme has fundamentally changed, the court cannot conclude it made a "manifest" error in its interpretation of Section 504(b).[3]

---

[3] The plaintiff considered the court's reliance on other statutes in the tenure law "troubling" because of the "[n]otwithstanding any other provision to the contrary," language that begins the amended Section 504(b), which, the plaintiff contends, requires the court to find the meaning of the statute "within the confines of the section itself." (Docket No. 93 at 5.) First, from a statutory interpretation perspective, it is certainly appropriate and often necessary to consider the related statutes in the Code in order to assist in determining the meaning of a provision. *Turner*, 193 S.W.3d at 526 ("statutes on the same subject must be construed together harmoniously, so that they do not conflict."); *Elgharib*, 600 F.3d at 601 (basic statutory interpretation requires that the court consider "the language and design of the statute as a whole.") Moreover, whatever the intent of the "notwithstanding" language, the language is not followed by an explicit provision conferring automatic tenure or other language indicating that the scheme for conferring tenure laid out elsewhere in the Code is no longer applicable; rather, it is followed by language that re-states the basic statutory framework by which the director

9

As argued by the defendants, the court's interpretation of the amended Section 504(b) does not render the legislature's change to the statute, which is presumed to be purposeful and "deliberate," useless. *See Turner,* 193 S.W.3d at 527. That is, before, the director of schools was required to advise the board when a teacher was up for tenure consideration and, now, the responsibility on the parties is significantly greater. The director must now sift out the teachers who are worthy of tenure consideration and present those to the board (non-renewing the rest), and the board must make an "up or out" employment decision as to those teachers presented by the director. Clearly, this is a significant change; but recognizing that change does not require the conclusion that the teacher can obtain tenure automatically. Rather, it remains the responsibility of all parties – the teacher included – to know and understand how the tenure system works and to operate within that system.

### ii. Legislative history

Assuming that recourse to legislative history were appropriate, the CD provided by the plaintiff here does not demonstrate a clear error either. Rather, some of the comments during debate on the amendment support the plaintiff's position, and some support the court's interpretation.

For instance, Representative Montgomery, who was the sponsor of the House bill, when generally discussing the bill in committee, on a few occasions, used the term "automatic" or "natural" to refer to the award of tenure if the teacher is re-hired after the probationary period.

---

recommends the teacher for tenure and then the board either approves or disapproves of the tenure application. As argued by Spivey, if the legislature intended to usher in an automatic tenure scheme – mitigating the relevance of at least three other statutes, including Section 504(b), and overruling *Bowden* – it is not clearly wrong to conclude that the legislature would have done so in a more straightforward manner.

10

(Docket No. 96 – audio CD – track Nos. 1 and 2.) However, in response to Montgomery's presentations, Representative Maddox repeatedly raised concerns about the bill and the affect it would have on the discretion of the school board, saying, at one point, that the impact of the bill on school board discretion needed to be "looked at" and he reiterated that "the school board grants tenure." (*Id.*)

In another session, Maddox raised the concern that a school board may have good reasons for not granting tenure to a particular, otherwise qualified, teacher, and Maddox reminded Montgomery and others that, "the director of schools recommends [the teacher]" and then the decision goes to the school board, to which Jerry Winters, of the Tennessee Education Association (who was involved in the particular committee discussion) stated that "the director ha[s] to make a recommendation and the board has the final decision." (*Id.*) In short, while the CD unquestionably contains statements by Montgomery that support the plaintiff's position, the legislative history as provided is not clear on what the individual legislators who voted for the bill considered to be its impact on the tenure scheme, and it does not indicate that the court made a "manifest error" of law in ruling that Section 504(b) does not create an automatic tenure scheme.

The plaintiff's contentions aside, this is an issue about which rational minds can differ. On the one hand, in the context in which a teacher, like the plaintiff, continued in his job long after the probationary period concluded, the language in the amended Section 504(b), that "the teacher cannot be continued in employment if tenure is not granted," permits the reasonable inference that tenure had been granted automatically through continued employment. However, considering that (1) Tennessee clearly retains a statutory scheme by which tenure is awarded

11

following a director recommendation and board consideration and by which mere service under Section 503 is not sufficient to confer tenure, (2) the absence of any explicit language providing for automatic tenure, and (3) the absence of any indication in the case law or scholarship that *Bowden* has been overruled, the court's initial conclusion that, in amending Section 504(b), the legislature imposed additional pressure on directors and boards without altering the fundamental scheme is not clearly wrong. Therefore, the plaintiff's Rule 59(e) motion will be denied.

### III. Additional Points on the Merits of the Plaintiff's Claim

Even if the court had concluded that the plaintiff was tenured, the plaintiff would not be entitled to relief under the unique circumstances of this case. As noted above, going into summary judgment briefing, the plaintiff maintained claims against the State Defendants (who were associated with the TBR), Spivey as director of the School, and Jackson and Macon Counties. Again, during summary judgment briefing, the plaintiff conceded that the State Defendants should be dismissed because the TBR is not bound by the teacher tenure law discussed above. (Docket No. 81 at 1; Docket No. 55 at 1.)

The protections afforded by the tenure law "kick in" once the teacher is "dismissed" from employment. *See* T.C.A. § 49-5-511(b). Under the unique facts of this case, the plaintiff was not "dismissed" by either Spivey (as director of the School) or the counties. Rather, as discussed in the Memorandum, in May 2008, once the TBR announced its intention to take over the School in the coming school year, it became clear that, should the TBR follow through on its plan to assume control of the School, the plaintiff would probably not be able to continue his employment at the School because the TBR did not intend to offer the automobile mechanics class, which was the only class that the plaintiff was qualified to teach at the School. (Docket

12

No. 88 at 4.) The plaintiff, however, after being informed by Spivey of the TBR's announcement, continued to work at the School through the end of the school year. (*Id.*) The plaintiff did not return to the School in the fall because the TBR had assumed control of the School and did not offer the class that the plaintiff had taught.

On the unique facts of this case, and under a commonsense interpretation of the term "dismiss," it is clear that, if any entity "dismissed" the plaintiff, it was the TBR, which elected not to offer the class that the plaintiff taught and, therefore, did not invite the plaintiff to continue his employment at the School. As the plaintiff stated in his initial motion for summary judgment, "the [TBR] made the decision that ultimately deprived the plaintiff of his constitutionally protected interest in his tenured position." (Docket No. 64 at 9.) While the plaintiff claimed that the county defendants "carried out that decision," it is clear that Spivey merely informed the plaintiff that, if the TBR assumed control, the plaintiff would likely be out of a job. (*Id.*) The plaintiff had been re-employed by the county defendants for the previous seven years; the only reason for a change in that circumstance was that the TBR took over the School and made the decisions as to which classes to offer.

Therefore, even if the plaintiff were tenured, he would be unable to show that his procedural due process rights had been violated by either Spivey, as director, or the counties.

13

## CONCLUSION

For the reasons discussed herein, the plaintiff's Motion to Alter or Amend Judgment (Docket No. 92) will be denied.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

14

Case 2:09-cv-00007   Document 104   Filed 08/25/10   Page 14 of 14 PageID #: 952